IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS (Wichita)

| | |
|---|---|
| IN RE: | ) |
| | ) |
| Mark Jason McLaren | ) Case No. 25-10802 |
| | ) Chapter 11 |
| Debtor, | ) |
| _____ | ) |
| Honda Lease Trust, by American Honda | ) |
| Finance Corporation dba Honda Financial | ) |
| Services | ) |
| Movant, | ) |
| v. | ) |
| | ) |
| Mark Jason McLaren | ) |
| Respondent, | ) |
| and | ) |
| | ) |
| Richard A. Kear | ) |
| Trustee. | ) |

## **MOTION FOR ORDER MODIFYING AUTOMATIC STAY**

COMES NOW Honda Lease Trust, by American Honda Finance Corporation dba Honda Financial Services, its subsidiaries, affiliates, predecessors in interests, successors or assigns, ("Movant"), by and through its council of record, and in support of its motion, states as follows:

1.      Debtor is currently indebted to Honda Lease Trust, by American Honda Finance Corporation dba Honda Financial Services in the sum of $38,846.08 plus fees and costs (including purchase option).

2.      On or about May 8, 2023, Debtor executed and delivered to Schofield Honda a lease agreement pursuant to which Debtor leased a 2023 Honda Pilot; VIN 5FNYG1H83PB006532 (the "Leased Vehicle").  The lease was subsequently assigned to Honda Lease Trust, by American Honda Finance Corporation dba Honda Financial Services.  Copies of said Lease, Assignment and Title Information are appended hereto.

3. Respondent has defaulted on his obligation to Movant and the current delinquent amount due is $1,319.98, representing default for two (2) months. Movant will be inadequately protected in the event that the automatic stay is not lifted. Respondent is unable to make the payments called for in the Agreement during the pendency of this bankruptcy.

4. The value of the leased vehicle is declining during the pendency of this bankruptcy and will continue to depreciate until it is recovered and sold in accordance with the Lease provisions.

**WHEREFORE**, Movant, its successors or assigns, respectfully requests the Court to enter, among others, the following orders:

(a) An order modifying the automatic stay for the purpose of allowing Movant to enforce its leasehold interest by repossessing and selling said Leased Vehicle pursuant to the default provisions of said Lease and applicable state law;

(b) An order granting such other and further relief as the Court deems just

Respectfully submitted,

LEWIS RICE LLC

/s/Michael P. Gaughan
Michael P. Gaughan, #70120
10484 Marty Street
Overland Park, KS 66212
(913) 648-6333 / Fax: (913) 642-8742
mgaughan@lewisricekc.com
ATTORNEY FOR MOVANT

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on this 13th day of October, 2025, a copy of the foregoing Notice, together with a copy of the motion and exhibits were mailed to each of the following persons:

Mark Jason McLaren
2747 N Bracken Ct.
Wichita, KS 67235
Debtor

Richard A. Kear
301 N. Main St., Ste. 1150
Wichita, KS 67202
Trustee

U.S. Trustee
Office of the United States Trustee
301 North Main Suite 1150
Wichita, KS, 67202

Ryan A. Blay
15095 W. 116th St.
Olathe, KS 66062
Attorney for Debtor

/s/Michael P. Gaughan
Attorney for Movant

Kansas Department of Revenue
PO Box 12005
Topeka KS 66612-2005

Internal Revenue Service
PO Box 7346
Philadelphia PA 19101-7346

Missouri Department of Revenue
PO Box 475
Jefferson City MO 65105-0475

American Express
PO Box 981537
El Paso TX 79998

American Honda Finance
PO Box 168128
Irving TX 75016

Attorney Karl R. Swartz
Morris Laing Law Firm
300 N Mead, Ste. 200
Wichita KS 67202

Bankers Healthcare Group, LLC
10234 W. State Rd. 84
Fort Lauderdale FL 33324

Bankers Healthcare Group, LLC
c/o Paracorp Incorporated
Registered Agent
13910 S. Brougham Drive
Olathe KS 66062

Bankers Healthcare Group, LLC
201 Solar St.
Syracuse NY 13204

Best Buy/CBNA
5800 S Corporate Place
Sioux Falls SD 57108

Capital One
PO Box 31293
Salt Lake City UT 84131

Chase
PO Box 15298
Wilmington DE 19850-5298

Christy Lynzette McLaren
2747 N Bracken Ct.
Wichita KS 67226-4030

Citicards CBNA
5800 South Corporate Place
Sioux Falls SD 57108

Commerce Bank
PO Box 410857
Kansas City MO 64141

Diamond Storage
10502 E. 26th Cir N
Wichita KS 67226

Emprise Bank
PO Box 2970
Wichita KS 67201

Emprise Bank
257 N. Broadway St.
Attn: Officer
Wichita KS 67201

Emprise Bank
257 N. Broadway
Wichita KS 67201

FC Marketplace, LLC
707 17th Street, Suite 2200
Denver CO 80202

Forward Financing LLC
53 State St., 20th Floor
Boston MA 02109-2820

High Caliber Landscape, LLC
PO Box 53
Wichita KS 67226

Honda Financial Services
PO Box 60001
City of Industry CA 91716

Honda Financial Services
PO Box168008
Irving TX 75016

Honda Financial Services
PO Box 168128
Irving TX 75016

Joseph G. Baba, D.D.S., PA
4620 E Douglas Ave
Ste. 102
Wichita KS 67208

Joseph G. Baba, D.D.S., PA
c/o Joseph G. Baba, DDS
registered agent
1035 N Emporia
Wichita KS 67214

Joseph G. Baba, DDS 12206 W Ridgepoint St. Wichita KS 67235
JPMCB - Card Services PO Box 15369
Wilmington DE 19850

Kansas Payment Center
Post Office Box 758599

Topeka KS 66675

Kapitus LLC
2500 Wilson Blvd, Ste. 350
Arlington VA 22201-3873

MOHELA
633 Spirit Drive
Chesterfield MO 63005-1243

Mohela/Earnest
633 Spirit Drive
Chesterfield MO 63005

Noah McFerran
2747 N Bracken Ct.
Wichita KS 67226

Robyn Kirkpatrick
6302 Beachy Ave
Wichita KS 67208

Sofi Bank
PO Box 654081
Ste. 300
Dallas TX 75265-4081

TIAA FSB
PO Box 1283
Charlotte NC 28201-1283

TIAA, FSB
10 Waterview Blvd.
Parsippany NJ 07054

Upgrade Inc
2 North Central Ave
10th Floor
Phoenix AZ 85004

Upstart
PO Box 1503
San Carlos CA 94070

**LAW** **HFS-UCL-U-e-14 1/21**   Exhibits

**CONSUMER PAPER**
**CLOSED END MOTOR VEHICLE LEASE**
(WITH ARBITRATION PROVISION)

Lease Date: 05/08/2023

| Lessor Name and Business Address | Lessee Name and Address | Co-Lessee Name and Address |
|---|---|---|
| SCHOLFIELD HONDA<br>7017 EAST KELLOGG<br>WICHITA, KS 67207-6739 | MARK JASON  MCLAREN<br>2747 N BRACKEN CT<br>WICHITA, KS 67226<br><br>County: Sedgwick | CHRISTY  LYNZETTE MCLAREN<br>2747 N BRACKEN CT<br>WICHITA, KS 67226<br><br>County: Sedgwick |

| Lessee Billing Address (if different than above) | Vehicle Garaging Address (if different than above) |
|---|---|
| N/A | N/A<br><br>Principal Driver: N/A<br>County: N/A    (if business use) |

In this Lease, "you" and "your" mean the lessee and co-lessee. "We," "us" and "our" mean the Lessor named above, and any assignee of this Lease.

☑ If this box is checked, Lessor will assign this Lease and sell the Vehicle to ___Honda Lease Trust___ ("Assignee") and ___Honda Financial Services ("HFS")___ helped arrange this Lease. Each of you who signs the Lease is jointly and severally liable to us for all Lease obligations. You are leasing the Vehicle described below (the "Vehicle") from us. You agree to pay all amounts due under the Lease and fulfill all your obligations under the Lease. In this Lease, "e" means an estimate. The Consumer Leasing Act Disclosures shown below are also terms of this Lease. You are leasing the Vehicle and have no ownership rights in the Vehicle unless you exercise your purchase option.

**Monthly Payment Lease:** If your payment schedule shows monthly scheduled payments in Item 3A, your Lease is a monthly payment lease.

**Single Payment Lease:** If your payment schedule shows a single scheduled payment in Item 3B, your Lease is a single payment lease.

**1. The Vehicle**

| New/Used | Year | Make | Model | Body Style | Vehicle ID # | Odometer | Primary Use |
|---|---|---|---|---|---|---|---|
| NEW | 2023 | Honda | Pilot | Elite AWD | 5FNYG1H83PB006532 | 6 | **Personal, unless otherwise indicated below**<br>☐ business    ☐ agricultural |

Vehicle Prior Use (as checked):    ☐ Demonstrator    ☐ Factory Official    ☐ Rental    ☐ Taxi or Livery

**CONSUMER LEASING ACT DISCLOSURES**

**2. Amount Due at Lease Signing or Delivery**

(Itemized in Item 6)

$ 10,500.00

**3. Scheduled Payments**

A. Your first monthly payment of $ 659.99 is due on 05/08/2023, followed by 35 monthly payments of $ 659.99, due on the 8th of each month.

B. Your single payment of $ N/A is due on N/A.

C. The Total of your Scheduled Payments is $ 23,759.64.

**4. Other Charges** (not part of your scheduled payment)

A. Turn-In fee (if you do not purchase the Vehicle and we do not waive the fee under Item 25(t))  $ 350.00
B. N/A    $ N/A
C. N/A    $ N/A
D. Total    $ 350.00

**5. Total of Payments** (The amount you will have paid by the end of the Lease)

$ 33,949.65

(2 + 3C + 4D – 6A3 – 6A4 – 6A5)

**6. Itemization of Amount Due at Lease Signing or Delivery**

**A. Amount Due at Lease Signing or Delivery:**

| | |
|---|---|
| 1. Capitalized cost reduction (amount paid in cash) | $ 780.47 |
| Sales/use tax on amount paid in cash | $ 58.54 |
| 2. Capitalized cost reduction (credit for net trade-in allowance) | $ 9,000.00 |
| Sales/use tax on credit for net trade-in allowance | $ N/A |
| 3. First monthly payment | $ 659.99 |
| 4. Single scheduled payment | $ N/A |
| 5. Refundable security deposit | $ N/A |
| 6. Lease acquisition fee | $ N/A |
| 7. Title fees | $ N/A |
| 8. License and registration fees | $ N/A |
| 9. Sales/use tax (excludes any tax shown in 1. or 2. above) | $ N/A |
| 10. Excise Tax | $ 1.00 |
| 11. N/A | $ N/A |
| 12. N/A | $ N/A |
| 13. Total | $ 10,500.00 |

**B. How the Amount Due at Lease Signing or Delivery will be paid:**

| | |
|---|---|
| 1. Net trade-in allowance | $ 9,000.00 |
| 2. Rebates and noncash credits | $ 500.00 |
| 3. Amount to be paid in cash | $ 1,000.00 |
| 4. Other N/A | $ N/A |
| 5. Total | $ 10,500.00 |

**7. Your scheduled payment is determined as shown below:**

A. **Gross capitalized cost.** The agreed upon value of the Vehicle ($ 57,494.00) and any items you pay over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance).   $ 58,588.00

B. **Capitalized cost reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost.   – $ 9,780.47

C. **Adjusted capitalized cost.** The amount used in calculating your base scheduled payment.   = $ 48,807.53

D. **Residual value.** The value of the Vehicle at the end of the Lease used in calculating your base scheduled payment.   – $ 34,536.60

E. **Depreciation and any amortized amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the lease term.   = $ 14,270.93

F. **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts.   + $ 7,830.91

G. **Total of base scheduled payments.** The depreciation and any amortized amounts plus the rent charge.   = $ 22,101.84

H. **Lease payments.** The number of payments in your Lease.   ÷ 36

I. **Base scheduled payment.**   = $ 613.94

J. **Sales/use tax (e).**   + $ 46.05

K. N/A   + $ N/A

L. N/A   + $ N/A

M. **Total Scheduled Payment.**   = $ 659.99

**Early Termination. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.**

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 12,000 miles per year at the rate of $ 0.20 per mile.

**9. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the lease term for $ 34,536.60 plus a purchase option fee of $ 0.00. The purchase option price does not include official fees such as those for taxes, tags, licenses and registration.

**10. Other Important Terms.** See your Lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**NOTICE: ALL PAGES OF THIS LEASE CONTAIN IMPORTANT TERMS AND CONDITIONS, INCLUDING AN ARBITRATION PROVISION. THE TERMS AND CONDITIONS ON ALL PAGES ARE PART OF THIS LEASE.**

This is not the Authoritative Copy.

This is not the Authoritative Copy.

**IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS LEASE, WE MAY RETAKE THE VEHICLE.**

## 11. The Trade-In Vehicle

| | |
|---|---|
| Year 2019 | A. Gross Amount of Trade-In Allowance — $ 28,000.00 |
| Make GMC | B. Less Trade-In Payoff — $ 19,000.00 |
| Model Yukon | C. Net Trade-In Allowance (If less than 0 then enter 0) = $ 9,000.00 |

## 12. Itemization of Gross Capitalized Cost

| | | | |
|---|---|---|---|
| A. Agreed upon value of the Vehicle: | $ 57,494.00 | K. N/A | $ N/A |
| Other amounts included in the gross capitalized cost: | | Optional Insurance, Products, and Services: | |
| B. Taxes | $ N/A | L. N/A | $ N/A |
| C. Title, license, and registration fees | $ N/A | M. N/A | $ N/A |
| D. Lease acquisition fee | $ 595.00 | N. N/A | $ N/A |
| E. Administration fee | $ 499.00 | O. N/A | $ N/A |
| F. Prior credit or lease balance | $ N/A | P. N/A | $ N/A |
| G. N/A | $ N/A | Q. N/A | $ N/A |
| H. N/A | $ N/A | R. N/A | $ N/A |
| I. N/A | $ N/A | S. N/A | $ N/A |
| J. N/A | $ N/A | T. Total Gross Capitalized Cost: | $ 58,588.00 |

**13. Official Fees and Taxes.** The total amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included in your scheduled payments or assessed otherwise: $ 2,811.34 (e). The actual total of fees and taxes may be different than this estimate based on changes in the tax or fee rates and the value of the Vehicle when the fee or tax is determined.

**14. Late Payments.** For any payment not received within 10 days of the date it is due, you will pay a late charge of $25 or 5% of the part of the payment that is late, whichever is less. Colorado residents will pay a late charge of $15.00. Iowa residents will not pay a late charge.

You will not have to pay a late charge if the only amount that is late is a late charge you owed for an earlier late payment.

**15. Returned Payment and Unpaid Fines and Fees.** You will also pay a returned payment charge of $ 20.00 for any check, instrument or electronic funds debit that is returned unpaid for any reason, if the law allows it. If you don't pay a fine, penalty, toll, or parking ticket and we elect to pay it, you will reimburse us for the amount paid plus a $ 25.00 Administrative Fee per incident, if the law allows it.

**16. Warranties.** The Vehicle is subject to the manufacturer's standard warranty, unless this box is checked: ☐

☐ If this box is checked, the Vehicle is subject to the following express warranties:
N/A
N/A
N/A

Warranty papers that are separate from this Lease state any coverage limits.

The law gives you a warranty that the Vehicle conforms to the description in this Lease. **THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.**

Except as prohibited by law, the following sentence applies. **WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.**

If we make a written warranty covering the Vehicle or, within 90 days of the Lease Date we enter into a service contract covering the Vehicle, this disclaimer will not affect any implied warranties during the term of the warranty or service contract.

The disclaimer of warranties does not apply:
- in Massachusetts, if you are leasing the Vehicle primarily for personal, family, or household use.
- in Kansas and West Virginia, if you are leasing the Vehicle primarily for personal, family, household, or agricultural use.

## 17. OPTIONAL INSURANCE, PRODUCTS, AND SERVICES

You are not required to buy any of the following optional insurance, products, or services to enter into the Lease. The term of any optional insurance, product, or service will be the lease term, unless a different term is shown below. If you decide you want to purchase insurance or an optional product or service, review the terms of the contract, policy, or certificate that describes the insurance, product, or service before you initial below. A completed copy of the contract, policy, or certificate will be given to you as soon as practicable. **By initialing below, you indicate that you want to buy the optional insurance, products, or services indicated. If the cost shown below is not shown as part of the Itemization of Amount Due at Lease Signing or Delivery (Item 6), it has been added to the Gross Capitalized Cost (Item 12).**

| Optional Insurance, Product or Service | Term/Coverage | Price | Name of Provider | Approval |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | Lessee Initials N/A   N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A   N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A   N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A   N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A   N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A   N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A   N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A   N/A |

## 18. EXTRA MILEAGE

You are purchasing N/A extra miles per year at a rate of $ N/A per mile. The extra miles are included in the amount shown in Item 8 "Excessive Wear and Use." ☐ If this box is checked, you will receive a credit for unused purchased extra miles if this Lease ends on or after the start of the last monthly period (see Item 20A). This credit will equal N/A cents per purchased unused mile times each mile under N/A , up to the N/A total extra miles you purchased. You will not receive this credit for unused purchased miles if this Lease ends before the start of the last monthly period, the Vehicle is destroyed, you purchase the Vehicle, or you are in default.

## 19. TYPES AND AMOUNTS OF REQUIRED INSURANCE COVERAGE

You must maintain the following types and minimum amounts of insurance: $ 100,000.00 per person for bodily injury; $ 300,000.00 per accident for bodily injury; $ 100,000.00 per accident for property damage. If the minimum amounts of insurance required by the state in which the Vehicle is garaged are higher than amounts stated in this Lease, you agree to maintain insurance that meets the minimum state requirements. You agree to maintain collision, fire, theft, and comprehensive coverage with a maximum deductible of $ 1,000.00 . See Item 25(a) for additional insurance provisions. You confirm that insurance policies that meet the requirements described in this Lease are in force on the date of this Lease.

Insurance Provider FARMERS

Agent's Name STEPHEN MILLS

Agent's Address 116 W CENTRAL AVE, EL DORADO, KS 67042

Policy Number 193070982

Agent Phone Number (316) 321-2387

## 20. LAST MONTHLY PERIOD AND LEASE TERM

**A.** The start of the last monthly period for a monthly payment lease is the due date for the last monthly payment. For a single payment lease, the start of the last monthly period is the date that is one month before the scheduled lease end.

**B.** The scheduled lease term is 36 months.

## 21. HOW THIS LEASE CAN BE CHANGED

This Lease contains the entire agreement between you and us relating to this Lease. Any change to the Lease must be in writing and both you and we must sign it. No oral changes are binding.

Lessee Signs X _(signature)_

Co-Lessee Signs X _(signature)_

## 22. EXCESS WEAR WAIVER

We will waive excess wear charges (Item 25(c)) in an amount up to $ 500.00 if, at the time this Lease ends, you are not in default under the terms of this Lease (Item 23).

## 23. DEFAULT, REPOSSESSION AND OTHER REMEDIES

<u>You will be in default if:</u>

• You do not pay any payment on the scheduled due date (or, if an Iowa resident within 10 days of the scheduled due date); or

• <u>You do any of the following:</u> • You do not pay any other amount due under this Lease when we ask that you pay it; • You provide any false or misleading information in any Lease application; • You fail to maintain required insurance; • You lose possession of the Vehicle by confiscation, forfeiture or other involuntary transfer whether or not the Vehicle is the subject of judicial or administrative proceedings; • <u>You assign the Lease or transfer the Vehicle without our prior written permission, or attempt to do either;</u> • You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property; • You do anything that endangers the Vehicle or your ability to pay your Lease obligations; • You fail to return the Vehicle when required to do so under this Lease; • You fail to meet any other obligation under this Lease; • You do anything the law says is a default. In Kansas, Rhode Island, and South Carolina, we will only treat these events as an event of default if it significantly impairs the prospect of payment, performance, or our realization of the Vehicle. In Iowa, we will only treat these events as an event of default if it materially impairs the prospect of payment of the amounts due under the Lease. We bear the burden of establishing significant or material impairment.

If you are in default, after providing any notice and waiting any time the law requires, we may do any of the following: • End this Lease early and require you to pay the amount due at early termination; • Take any action we believe is required to protect our interest in the Vehicle (for example buying insurance) and our action will not cure your default; • Add any amounts we spend taking these actions to your Lease obligation and charge rent on the amount added, or at our option, ask you to pay these amounts right away; • If the Vehicle is equipped with electronic tracking technology, use it to find the Vehicle; • Cancel any optional insurance, products, and services included with this Lease and apply any refund to your Lease obligations (you hereby instruct any provider of such insurance, products, and services to pay us any refund or credit due on early cancellation); • Take (repossess) the Vehicle wherever we find it and enter any property where the Vehicle may be to do so; • Sue you for damages or to get the Vehicle back; • Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law allows. We may use the license plates on the Vehicle to move it to a storage place. After repossessing the Vehicle, we will hold it free of any rights you may have under this Lease, subject to any right the law gives you to cure the default or recover the Vehicle. We may take and store any personal items that are in the Vehicle. If you do not ask for these items back, we may dispose of them as the law allows. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the Vehicle, attorney's fees paid to an attorney not a salaried employee of the Lessor, collection costs, and court costs. Iowa and Ohio residents will not pay any attorney's fees. West Virginia residents will not pay any attorney's fees, collection costs, or court costs. Colorado residents will not pay collection costs, but may pay attorney's fees up to 15% of the amount owed. Kansas residents will not have to pay both attorney fees and collection agency fees, and collection costs will not exceed 15% of the amount owed. Georgia, North Carolina, Oklahoma, and South Carolina residents may pay attorney's fees up to 15% of the amount owed. If you are a Utah resident and we hire an attorney or a third party collection agency to collect what you owe, you will pay the lesser of: • The actual amount we are required to pay to the third party collection agency or the attorney, regardless of whether that amount is a specific dollar amount or a percentage of the amount owed to us; or • 40% of the amount owed to us.

To the extent allowed by law, you waive: (i) notice that we intend to end this Lease and require you to return the Vehicle, (ii) notice that we have ended this Lease and that you are required to return the Vehicle, (iii) notice that we intend to require you to pay the Early Termination Liability, (iv) notice that we are requiring you to pay the Early Termination Liability, (v) notice of our intention to take possession of the Vehicle, (vi) notice that we have taken possession of the Vehicle, and (vii) any other notices pertaining to our exercise of our rights or of our intention to exercise our rights.

## 24. EARLY TERMINATION LIABILITY

**When the Lease Can End Early.** You may terminate (end) the Lease early by returning the Vehicle to us and paying us your early termination liability (see below) when we ask for it.

We may end the Lease early if you are in default; the Vehicle is destroyed or damaged beyond repair, stolen or lost (a "Total Loss"); or you die and there is no surviving lessee. If we end the Lease, you must return the Vehicle to the place we designate and pay us the early termination liability (see below) when we ask for it.

**Early Termination Liability.** Unless the Vehicle is a Total Loss, forfeited or confiscated subject to Item 25(b), we will figure your early termination liability as follows:

**Monthly Payment Lease.** You will owe the amount, if any, by which the Adjusted Lease Balance (see definition below) exceeds the Vehicle's Fair Market Wholesale Value (see definition below) at termination. If this amount is more than the total of the following amounts, you will instead pay the total of the following amounts: • The total of your base scheduled payments not yet due; • An excess wear charge (see Item 25(c)); and • An excess mileage charge for any miles in excess of the permitted mileage during the scheduled lease term at the rate per mile shown in Item 8.

**Single Payment Lease.** The Base Scheduled Payment (Item 7I) paid at lease signing prepays the depreciation and any amortized amounts (Item 7E) and the rent charge (Item 7F). If the Vehicle's Fair Market Wholesale Value at termination (see definition below) exceeds the Adjusted Lease Balance (see definition below), we will give you a credit for the excess up to the amount of the Unused Base Scheduled Payment (see definition below). If the Adjusted Lease Balance exceeds the Vehicle's Fair Market Wholesale Value at termination, you will owe the excess up to the total of the following amounts: • An excess wear charge (see Item 25(c)); and • An excess mileage charge for any miles in excess of the permitted mileage during the scheduled lease term at the rate per mile shown in Item 8.

In addition to the amounts described above, you will also owe us the Item 4A Turn-In Fee unless this fee is waived under Item 25(t) plus the Additional Amounts Due and we will apply the Additional Credits to the amount you owe (see Item 25(s)).

**Definition of Adjusted Lease Balance.**

**Monthly Payment Lease.** The Adjusted Lease Balance equals the difference between: (1) The Item 7C Adjusted Capitalized Cost; and (2) all depreciation and amortized amounts in the base scheduled payments that have become due. Each Item 7I Base Scheduled Payment consists of • a rent charge portion; and • a portion allocable to depreciation and any amortized amounts. Although the amount of your Item 7I Base Scheduled Payment does not change, different portions of each Base Scheduled Payment are allocated to • rent charge; and • depreciation and any amortized amounts. The portion of a Base Scheduled Payment that is allocated to depreciation and any amortized amounts is equal to the Base Scheduled Payment minus the rent charge for that month. We use the Constant Yield Method to figure the rent charge portion of each Base Scheduled Payment. Under the "Constant Yield Method," the rent charge for each scheduled period is earned in advance by multiplying the constant rate implicit in this Lease times the Balance Subject to Rent Charge as it declines during the lease term. At any given time during the lease term, the "Balance Subject to Rent Charge" is the difference between the Item 7C Adjusted Capitalized Cost and the sum of: (i) all depreciation and amortized amounts accrued during the previous monthly periods, and (ii) any Base Scheduled Payment paid at Lease signing or delivery. The scheduled rent charge calculations are based on the assumption that we will receive your scheduled payments on their exact due dates and that the Lease goes to its full term.

**Single Payment Lease.** The Adjusted Lease Balance at the beginning of the Lease equals: (i) The Item 7C Adjusted Capitalized Cost; minus (ii) the Item 7I Base Scheduled Payment. At the beginning of each month, the Adjusted Lease Balance increases by the rent charge for that month. We use the Constant Yield Method to figure the rent charge for each month. Under the "Constant Yield Method" the rent charge for each monthly period is earned in advance by multiplying the constant rate implicit in this Lease times the Balance Subject to Rent Charge as it increases during the lease term. At any given time during the lease term, the "Balance Subject to Rent Charge" equals: (i) the Item 7C Adjusted Capitalized Cost; minus (ii) the Item 7I Base Scheduled Payment; plus (iii) all rent charges accrued during previous monthly periods. The rent charge calculations are based on the assumption that the Lease goes to its full term.

**Definition of Fair Market Wholesale Value.** Unless you exercise your independent appraisal right (see below) or you and we agree on another amount, the Fair Market Wholesale Value of the Vehicle is, at our option: • the price we receive for the Vehicle at disposition; • the highest offer we receive for disposition of the Vehicle; • or the wholesale fair market value of the Vehicle.

**Definition of Unused Base Scheduled Payment (Single Payment Lease).** The Unused Base Scheduled Payment equals: (i) the Item 7I Base Scheduled Payment; divided by (ii) the number of months in the lease term (Item 20B); times (iii) the number of full months remaining after the date of the early termination until the scheduled lease end.

**Your Independent Appraisal Right.** To the extent your early termination liability takes into account the value of the Vehicle at termination, you may get a professional appraisal of the Vehicle's fair market wholesale value. If you do so within a reasonable time, we will use the appraised value as the Fair Market Wholesale Value. The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for any appraisal. The appraisal will be binding.

## 25. OTHER TERMS AND CONDITIONS

**(a)** **Insurance.** For the duration of the lease term, and until you return the Vehicle, you agree to maintain the amounts and types of primary insurance as indicated in Item 19 on page 2 of this Lease in your name. You may buy the insurance from any insurance company authorized to do business and that is reasonably acceptable to us. You must indicate us or anyone we require as an additional insured and loss payee on your policy. Your policy must state that we will be given at least 30 days' notice of any material coverage change, reduction, or cancellation. If your insurer does not pay a claim for any reason, it will mean that you have not maintained the required insurance. You will pay for any loss we incur because you do not maintain required insurance or because the insurer does not pay a claim. If you fail to obtain and maintain the required insurance, we may, if we choose, buy it for you. We may add the amount we pay for this insurance to your unpaid Lease obligations and charge rent on the amount added, or at our option, ask you to pay it right away. If we decide to buy this insurance, we may either buy insurance that covers your interest and our interest, or buy insurance that covers only our interest, unless the law requires us to buy insurance that also protects your interest. If the Vehicle is damaged, stolen, or destroyed, and money becomes available from insurance, a judgment, a settlement, or the like, we will be entitled to the money. If the Lease ends in connection with our receipt of the money or has already ended at the time we receive it, we will treat any of the money we do not use to repair the Vehicle as part of the price we received for the Vehicle at disposition, unless otherwise provided for in Item 25(b).

**NOTICE: PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

**(b)** **Total Loss, Forfeiture or Confiscation of Vehicle.** If, during the lease term, the Vehicle is a Total Loss (as described in the second paragraph of Item 24, Early Termination Liability) or the Vehicle is forfeited or confiscated under governmental authority, we will end the Lease early as described in Item 24 Early Termination Liability, and you will owe the amounts described in the following paragraphs of this Item 25(b) instead of the amounts described in Item 24. You will notify us in writing after any event that might cause the Vehicle to be a Total Loss or to be forfeited or confiscated under governmental authority. You will promptly file a police report if the Vehicle is stolen or lost. You will give us any documents we request that are reasonably related to a Total Loss.

**Monthly Payment Lease.**

If the Vehicle is a Total Loss that is not the result of your fraudulent, criminal, or other intentional wrongful act and we receive a settlement under an insurance policy that complies with the requirements of this Lease (see Items 19 and 25(a)), you will have gap protection, which means:

We will deduct the Additional Credits (see Item 25(s)) from the Adjusted Lease Balance (see Item 24) to compute a net lease balance (the "Net Lease Balance").

If the Net Lease Balance is greater than the insurance settlement we receive, you will owe the excess up to the sum of the following: (i) the amount of your insurance deductible; and (ii) the total amount of any deductions from the value of the Vehicle used to compute the insurance settlement we receive due to past due premiums or the condition of the Vehicle before the Total Loss occurred.

If the insurance settlement we receive is greater than the Net Lease Balance, you will receive a credit for any excess up to the amount of the Additional Credits deducted above.

If: (i) the Vehicle is a Total Loss and we do not receive a settlement under an insurance policy that complies with the requirements of this Lease, (ii) the Total Loss is the result of your fraudulent, criminal, or other intentional wrongful act, or (iii) the Vehicle was forfeited or confiscated under governmental authority, then you do not have gap protection, which means:

You will owe us: (i) the Adjusted Lease Balance; minus (ii) any part of your insurance deductible that you pay us; minus (iii) any settlement we receive from your insurance company; minus (iv) any amount we receive for selling the Vehicle as salvage; plus (v) if the Vehicle is returned to us, the Item 4A Turn-In Fee unless this fee is waived under Item 25(t). If the amount we figure in the preceding sentence is less than zero, we will not give you a credit for that amount. We will apply the Additional Credits to the amount you owe (see Item 25(s)).

**Single Payment Lease.**

If the Vehicle is a Total Loss that is not the result of your fraudulent, criminal, or other intentional wrongful act and we receive a settlement under an insurance policy that complies with the requirements of this Lease (see Items 19 and 25(a)), you have gap protection, which means:

You will receive a credit for the Unused Base Scheduled Payment (see Item 24). You will deduct the Additional Credits (see Item 25(s)) from the sum of the Adjusted Lease Balance (see Item 24) and the Unused Base Scheduled Payment to compute a net lease balance (the "Net Lease Balance").

If the insurance settlement we receive is greater than the Net Lease Balance, you will also receive a credit for the excess up to the amount of the Additional Credits deducted above.

If the Net Lease Balance is greater than the insurance settlement we receive, you will owe the excess up to the sum of the following: (i) the amount of your insurance deductible; and (ii) the total amount of any deductions from the value of the Vehicle used to compute the insurance settlement we receive due to past due premiums or the condition of the Vehicle before the Total Loss occurred.

If: (i) the Vehicle is a Total Loss and we do not receive a settlement under an insurance policy that complies with the requirements of this Lease, (ii) the Total Loss is the result of your fraudulent, criminal, or other intentional wrongful act, or (iii) the Vehicle was forfeited or confiscated under governmental authority, then you do not have gap protection, which means:

You will owe us: (i) the Adjusted Lease Balance; minus (ii) any part of your insurance deductible that you pay us; minus (iii) any settlement we receive from your insurance company; minus (iv) any amount we receive for selling the Vehicle as salvage; plus (v) if the Vehicle is returned to us, the Item 4A Turn-In Fee unless this fee is waived under Item 25(t). If the amount we figure in the preceding sentence is less than zero, we will give you a credit for that amount, up to the amount of the Unused Base Scheduled Payment. We will apply the Additional Credits to the amount you owe (see Item 25(s)).

In addition to the amounts in this Item 25(b), you will also owe us the Additional Amounts Due (see Item 25(s)). You will receive a credit for the Additional Credits only as described in this Item 25(b).

This is not the Authoritative Copy.

Not Our Copy

(c) **Standards for Wear and Use.** You agree to pay an excess mileage charge as indicated in Item 8 and an excess wear charge, at the early end of this Lease to the extent provided for in Item 24 or at the scheduled lease end, minus the amount, if any, of the excess wear charge waived under Item 22. Excess wear is wear beyond the minor wear reasonably expected to result from ordinary use of the Vehicle, assuming you maintain the Vehicle as this Lease requires (Item 25(g)) and use the Vehicle as this Lease permits (Item 25(i)). The excess wear charge will be our actual or estimated cost of repairing any excess wear. (We do not have to make the repairs.) Repairs, including tires, must be made with original equipment manufacturer's parts or those of equal quality and performance. These include but are not limited to those necessary to repair or replace: • painting or lettering the Vehicle or modifying its VIN; • accessories, equipment, or parts that have been added, removed, damaged or modified (including missing keys or remote entry devices) without our prior written permission; • road damage, chips, scratches, cracks, plugs, tinting, staining, corrosion or damage to the glass, paint, body, bumpers, suspension, engine, powertrain, frame, wheels, floor coverings, seats or any other part of the interior; • mechanical or electrical malfunction, upholstery, interior or trunkliner damage, stains or tears, dented trim or molding, or damage from water, sand, or freezing; • inoperable lights; • tires that have sidewall plugs, gouges, cuts or exposed cords or are not part of a matching set of five tires or of unequal quality to the originals (or four with a spare of quality and type as the original); • one or more tires with less than 1/8 inch of tread remaining at the shallowest point; • any condition that renders the Vehicle unsafe, incapable of passing any required inspection or makes the Vehicle run noisy, rough or unsafely; and • any other wear beyond normal wear. The failure to adequately maintain or repair the Vehicle may be considered excess wear. You will not owe a charge for excess mileage or excess wear if you purchase the Vehicle.

(d) **Security Deposit.** If you paid a security deposit this paragraph applies. Unless required by law, we do not keep the security deposit separate in a bank or earmarked on our books. We may apply some or all of the security deposit to any amounts you owe under this Lease, or, if you exercise your purchase option, to the price of the Vehicle. Any unused security deposit will be returned to you at the end of the Lease. We have no fiduciary duty to you with respect to the security deposit unless such duty is imposed by law. No interest, increase, or profit on the security deposit will accrue or be paid to you.

(e) **Option to Purchase Vehicle.** You have the option to buy the Vehicle at any time from a party designated by us. If you do, you agree to re-register and re-title the Vehicle in your name no later than 30 days from the time you purchase it. If you fail to do so, we reserve the right to cancel the registration. Before the scheduled lease end, the price will be the Adjusted Lease Balance (see Item 24) plus the Item 9 purchase option price minus the Item 7D Residual Value. At the scheduled lease end, the price will be the Item 9 purchase option price. At either time, you must also pay the Additional Amounts Due and we will apply the Additional Credits to the amount you owe (see Item 25(s)). Under this Lease, you will only be considered to have purchased the Vehicle if we assign the Vehicle's title directly to you.

(f) **Return of the Vehicle.** If you do not exercise your purchase option, you will return the Vehicle to us at a place we designate when this Lease ends. You agree to make the Vehicle available for inspection at our request. When you return the Vehicle, you must give us a completed, signed odometer disclosure statement. If you keep the Vehicle after the scheduled lease end, unless you return it within any grace period we offer, you will pay us at the beginning of each month for any part of a month you keep the Vehicle, an amount equal to:

- For a monthly payment lease, the Item 7M Total Scheduled Payment.

- For a single payment lease, the Item 7M Total Scheduled Payment divided by the number of months in the lease term (Item 20B).

Your payment does not permit you to keep the Vehicle unless you get our permission in advance.

(g) **Maintenance.** You will maintain the Vehicle in good, working order and repair. You will pay all operating costs, such as gasoline, oil, and replacement tires. You will, at your expense, service the Vehicle according to the owner's manual maintenance schedule. If the Vehicle is recalled, you will have the recall repairs or service performed. You will use original equipment manufacturer's parts or those of equal value, quality, and performance in the maintenance and service of the Vehicle. We may but are not required to provide you with a replacement vehicle for any reason. You will maintain and keep in the Vehicle a record of all maintenance performed on the Vehicle. This maintenance record will be available to us at any time, and will be provided to us at the end of the Lease.

(h) **Registration, Parking Tickets, Tolls and Taxes.** You must keep the Vehicle currently registered. You must pay all parking tickets, tolls and traffic fines relating to the Vehicle. If you do not pay such tickets, tolls and fines, we may do so for you, and you will pay us upon demand. We may add the amount to what you owe us if you do not pay us when we make demand. You must pay when due or reimburse us **if we pay for you, all government charges, fees and taxes whether assessed on you**, us, or the Vehicle. You will not have to pay our income taxes. If you do not pay the charges, fees and taxes, and interest or penalties are assessed (unless the interest or penalties are a result of our negligence), you must pay the interest or penalties when due or reimburse us if we pay them. **You must pay personal property taxes, ad valorem, sales, use or similar taxes assessed on the Vehicle, whether such fees or taxes are billed during or after the lease term, and whether you are billed for them by the government or whether we pay them and bill you for them or include the amount of such taxes as part of your scheduled payment.** We may change your scheduled payment if taxes change. If you don't pay a fine, penalty, toll or parking ticket and we elect to pay it, you will reimburse us for the amount paid plus the Item 15 Administrative Fee. If the vehicle is subject to Texas tangible personal property taxes, then: (i) you expressly waive any right you have under Texas law to receive notice of the appraised value of the Vehicle from us; and (ii) you agree not to protest the appraised value of the Vehicle. Pursuant to Colo. Rev. Stat § 43-3-302, you are liable for any toll evasion civil penalty incurred on or after you take possession of the Vehicle. We will provide your name, address, and driver's license number to the toll road or toll highway company when a toll evasion civil penalty is incurred during the term of this Lease.

(i) **Use of the Vehicle.** You will keep the Vehicle free from any liens or claims. You have the risk of loss, and are responsible for the Vehicle's damage or destruction. You will not: • Use the Vehicle illegally, improperly such as for towing that exceeds the manufacturer's towing recommendations, or for hire, such as for providing taxi services or for business purpose ridesharing; • Without our prior written consent, alter or install equipment that makes the Vehicle unsafe or unlawful to operate; • Use the Vehicle in a manner that your insurance policy prohibits or in a way that produces unusually high depreciation; • Allow unlicensed drivers to drive the Vehicle; • Use the Vehicle for more than 30 days outside the state where you originally registered the Vehicle without prior written notice to us and our prior written consent; • Take the Vehicle out of the United States without our prior written consent; • Use the Vehicle in high performance driving events, auto racing of any kind, high performance schools, or any similar activities; • Use the Vehicle for off-road travel or activities unless the Vehicle is a sport utility vehicle; or • Change the Vehicle without our prior written consent. You will not let anyone else do any of these things.

(j) **Indemnification. We are not responsible for any injuries, damages, expenses or claims, including claims for attorney fees or under the strict liability doctrine, caused by the maintenance, condition, or operation or use of the Vehicle. You agree to indemnify and hold us (and our assignees, successors, agents, and insurers) harmless for all such injuries, damages, expenses and claims as the law allows.**

(k) **Assignment of Returned Premiums and Other Amounts.** You assign to us any unearned returned premiums or charges or other amounts relating to insurance or any optional product or service sold in connection with this Lease and returned or paid to us. We will use these amounts to reduce amounts you owe under the Lease. You will earn no interest, increase, or profit with respect to such property.

(l) **Your Odometer Obligations.** You will maintain the odometer of the Vehicle so that it always reflects the Vehicle's actual mileage. If the odometer is at any time inoperable, you will provide us with reasonable evidence of the Vehicle's actual mileage. If you are unable to do so, you will pay us our reasonable estimate of any reduction of the Vehicle's fair market value caused by the inability to determine the Vehicle's actual mileage. You will provide us with an odometer certification at any time we request one. We may request more than one certification during the term of this Lease.

**Important Note: Federal law requires you to tell us the Vehicle's mileage in connection with a transfer of Vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.**

(m) **Assignment and Transfer of the Vehicle. You may not assign the Lease or transfer the Vehicle without our prior written permission.** We may assign all of our rights under this Lease. Any person to whom this Lease is assigned may reassign it. Any sale and assignment by us will not be considered to change materially your duties, burden, or risk under this Lease.

(n) **Ownership.** We are the sole owners of the Vehicle including original accessories and any installed after the Lease begins. This is a true lease for tax and other purposes and we receive all benefits of ownership. We have not given you any information or advice regarding possible tax consequences under this Lease.

(o) **Inspection.** Upon reasonable notice to you, at any reasonable place and time we choose we may inspect this Vehicle and you agree to cooperate with such inspection.

(p) **Waiver.** We may delay or refrain from enforcing any of our rights under this Lease without losing them.

(q) **Giving Notice.** Notices may be given personally or sent by first class mail. Notices mailed to us must be sent to the address shown in this Lease or as we otherwise direct from time to time. Notices shall be deemed given to us when they are personally given or actually received at our address. Notices shall be deemed given to you when they are personally given or when placed in the mail, addressed to you at your address then shown on our records, even though you might not actually receive our mailed notice. You agree that 10 days' notice is a reasonable notice period, unless state law requires a longer period, in which case you agree that the state-required period is reasonable.

(r) **Servicing and Collection Contacts.** You agree that we as well as any third party calling on our behalf and any assignee may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we as well as any third party calling on our behalf and any assignee may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to provide us with current contact information.

(s) **Additional Amounts Due and Additional Credits.** Regardless of how this Lease ends, you will owe us the following amounts: • Any official fees and taxes related to the termination. • Any other amounts due under this Lease including any unpaid late charges or other amounts due because you failed to meet your obligations under this Lease ("Additional Amounts Due"). If this Lease ends early, we may cancel any optional insurance, maintenance, service, or other contracts included in this Lease or claim benefits under them to reduce what you owe or repair the Vehicle ("Additional Credits").

(t) **Turn-In Fee Waiver.** The Item 4A Turn-In Fee will be waived if, at the time this Lease ends, you enter into a motor vehicle lease or installment sale contract that the dealer assigns to Honda Financial Services.

(u) **Liability Upon Termination at Scheduled Lease End or On or After the Start of Last Monthly Period.** Upon return of the Vehicle, you will pay us the total of the following amounts: • the Item 4A Turn-In Fee unless this fee is waived under Item 25(t); • an excess mileage charge for any miles in excess of the permitted mileage during the scheduled lease term at the rate per mile shown in Item 8; • any excess wear charge (Item 25(c)); • any amounts due under Item 25(f) because you failed to return the Vehicle on time; • the Additional Amounts Due (see Item 25(s)). We will apply the Additional Credits to the amount you owe (see Item 25(s)).

(v) **Settlement of Insurance Claims.** If there is any damage or loss to the Vehicle, you agree that we or our agent may settle any insurance claim or sign your name on any title or registration or on any check or draft we receive for that Vehicle damage or loss.

(w) **Jury Trial Waiver. In the event of litigation, concerning any claim or dispute, whether in contract, tort, or otherwise, you and we each agree to waive any right you and we may have to a jury trial, as the law allows.** Except as described in the Arbitration Provision below, this jury trial waiver does not apply if you are a resident of Georgia, Montana, North Carolina, or Wyoming.

(x) **Telematics System Consent.** The Vehicle is equipped with a Telematics System that collects and transmits to Lessor and its affiliates detailed information about the Vehicle's location, condition, operation (including speed, throttle and brake input, crash events and servicing), information that may be tied to the vehicle identification number (VIN) and can be combined to create a track of a vehicle, as well as the operator's utilization of Vehicle features. One of the important functions of this program is to provide Lessor with important real-world information about Lessee use, including, but not limited to: use habits, demographic profiles, and vehicle performance. You authorize us (and/or our affiliates) to collect, retain, and use such information. We will only access and use the information described above to the extent allowed by applicable law. We will obtain any additional consents required by applicable law to access and use this information.

(y) **Like-Kind-Exchange (LKE) Notice.** Notice is hereby given that HVT, Inc and Honda Lease Trust have assigned all of their rights (but not their obligations) to purchase and/or sell this Vehicle to Honda Finance Exchange, Inc., pursuant to the Sub-Servicing and Master Exchange Agreement.

(z) **General.** Federal law and the law of the state of Lessor's address on page 1 of this Lease apply to this Lease. If any part of this Lease is invalid, unenforceable or illegal in any jurisdiction, the part that is invalid, unenforceable or illegal will not be effective as to that jurisdiction. The rest of the Lease will be enforceable except as provided in the Arbitration Provision, on page 5 of this Lease. This Lease is our entire agreement. We have made no promises to you not contained in this Lease. If any part of this Lease is found by a court or other dispute resolution body to be void or unenforceable, this Lease is to be read as if that part were never contained in this Lease.

(aa) **Electronic Contracting and Signature Acknowledgment.** You agree that (i) this Lease is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this Lease and that this Lease be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this Lease using your written signature, and (iii) the authoritative copy of this Lease ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this Lease with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this Lease, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

This is not the Authoritative Copy.

## 26. ARBITRATION PROVISION

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our parents, subsidiaries, affiliates, employees, officers, agents, representatives, predecessors, successors or assigns, (individually and collectively "us" or "our") which arises out of or relates to your credit application, origination or servicing of this Lease, the manufacture, delivery, condition, or performance of this Vehicle, any representations, omissions, or warranties, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association (www.adr.org), JAMS (www.jamsadr.com), National Arbitration and Mediation (www.namadr.com), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges familiar with vehicle leasing, auto or consumer finance, and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Lessor named on page 1 of this Lease is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Lease was executed. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee in accordance with the rules and procedures of the chosen arbitration organization. If the rules of the chosen arbitration organization do not specify how fees must be allocated, we will pay the filing, administration, service or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law requires us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control.

Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court.

Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover amounts you owe under this Lease, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this Lease. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Opt Out: If you would like to opt out of arbitration, you may send us a written notice of opt out. The notice of opt out must provide your name, a description of the leased vehicle, including vehicle identification number (VIN), and a statement that you want to opt out of the arbitration provision. The written notice must be postmarked within 30 days of the date of this Lease and sent to Honda Financial Services, P.O. Box 165007, Irving, TX 75016. You agree that we may make changes to this Arbitration Provision if we notify you of the changes and give you another opportunity to opt out.

## 27. LESSOR'S ASSIGNMENT

Pursuant to the terms of that certain agreement between Lessor and the Assignee for the assignment of leases by Lessor to Assignee from time to time, Lessor hereby assigns all right, title and interest in the Lease and the Vehicle and rights the Lessor may have under any guaranty executed in connection with the Lease, with full powers to Assignee to collect and discharge all obligations, any guaranty and this assignment.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision, Item 26 above, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Lessee Signs X _(signature)_          Co-Lessee Signs X _(signature)_

**NOTICE TO THE LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT OR IN BLANK. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE WHEN YOU SIGN IT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. (3) YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY.**

**YOU AGREE TO THE TERMS OF THIS LEASE. YOU ACKNOWLEDGE YOU HAVE EXAMINED THE VEHICLE, THAT THE VEHICLE IS EQUIPPED AS YOU WANT, AND THAT IT IS IN GOOD CONDITION. YOU ACCEPT THE VEHICLE FOR ALL PURPOSES OF THE LEASE. YOU UNDERSTAND THAT YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE. YOU CONFIRM THAT BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU READ ALL PAGES OF THIS LEASE, INCLUDING THE ARBITRATION PROVISION ABOVE (ITEM 26), BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED THIS LEASE.**

### LESSEE SIGNATURES

**Lessee Signature** _(signature)_          Date 05/08/2023          **Co-Lessee Signature** _(signature)_          Date 05/08/2023

Type/Print Lessee Name MARK JASON MCLAREN          Type/Print Co-Lessee Name CHRISTY LYNZETTE MCLAREN

Commercial Lessee N/A          Date N/A          By N/A

Type/Print Name N/A          Type/Print Title N/A

**GUARANTY:** To induce us to lease the Vehicle to Lessee, each person who signs as a Guarantor individually guarantees the payment of this Lease. If Lessee fails to pay any money owing on this Lease, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Lessee has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Lessee more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) accept less from the Lessee than the total amount owing; or (4) otherwise reach a settlement relating to this Lease or extend the Lease. Each Guarantor acknowledges receipt of a completed copy of this Lease and Guaranty at the time of signing.

To the extent permitted by applicable law, Guarantor waives notice of acceptance of this Guaranty, notice of the Lessee's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Lessee.

**Guarantor Signature X** N/A          Date N/A          Type/Print Guarantor Name N/A

Guarantor Address N/A

### LESSOR'S ACCEPTANCE

The Lessor's authorized signature indicates the Lessor has accepted the terms, conditions and obligations of this Lease.

Lessor Name: SCHOLFIELD HONDA

By: _(signature)_

Type/Print Name: Joe Flack

Assignee Name: Honda Lease Trust

Type/Print Title: F&I

This is not the Authoritative Copy.

**LAW** FORM NO. HFS-UCL-U-e-14 (REV. 1/21)
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

HFS-UCL-U-e-14 1/21 v1    Page 5 of 5

# CERTIFICATE OF TITLE

## STATE OF KANSAS

VIN NO: 5FNYG1H83PB006532  
YEAR: 2023  
MAKE: HONDA  
MODEL: PILOT  
TITLE NO: AB3252900

STYLE: UT  
CLASS CODE: 032  
EMPTY WEIGHT: 4580

MILEAGE: 6  
*AND*  
MILEAGE STATUS: ACTUAL  
*REPORTED AS*  
DATE OF APPLICATION: 05/12/2023  
PURCHASE DATE: 04/26/2023  
DATE TITLE PRINTED: 06/10/2023

OWNER(S) NAME AND ADDRESS:

HONDA LEASE TRUST

2747 N BRACKEN CT  
WICHITA, KS 67226-4030

THIS VEHICLE IS SUBJECT TO THE FOLLOWING LIENS(S):

TRANSFER ON DEATH BENEFACTOR(S):

MAILING INFORMATION ONLY:

HONDA LEASE TRUST  
PO BOX 168008  
IRVING, TX 75016-8008

**VEHICLE RECORD NOTATIONS:**

**VEHICLE BRANDS:**

KANSAS IS AN ELECTRONIC TITLING STATE. A KANSAS TITLE WITH A LIEN INDICATED WILL ONLY BE ISSUED AND MAILED DIRECTLY TO A REQUESTING TITLING JURISDICTION WITH LIENHOLDER'S CONSENT.



I, the undersigned, hereby certify that I have approved an application for certificate of title for the vehicle described hereon, pursuant to the provisions of the Motor Vehicle Laws of this State, and the applicant named on the face hereof has been duly recorded as the lawful owner of said vehicle.

I further certify that the vehicle is subject to the security interests shown herein, if any. However, the vehicle may be subject to other security interests.

D0575277

David N. Harper  
Director of Vehicles

Mark A. Burghart  
Secretary of Revenue

TR-19T 12/21

VOID WITHOUT WATERMARK - HOLD TO LIGHT TO VIEW

VOID WITHOUT WATERMARK - HOLD TO LIGHT TO VIEW

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, WHITE OUT, ALTERATIONS OR MUTILATIONS

# DO NOT ACCEPT TITLE SHOWING ANY ERASURES, WHITEOUT, ALTERATIONS OR MUTILATIONS.

By affixing his or her signature, the seller assigns, transfers and conveys unto the purchaser(s) the vehicle described on this certificate of title and the seller warrants same to be free from all liens and encumbrances except as stated on the assignment or reassignment. Federal and Kansas law requires that the seller state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. Kansas residents must make application for title within 60 days of the date the vehicle was sold and delivered in the county treasurer's motor vehicle office where the vehicle will be garaged. Kansas is a paperless or electronic title state. A Kansas paper title cannot be issued if or as long as there is a lien or encumbrances showing on the division's records, except by request of another titling jurisdiction.

**IF YOU HAVE QUESTIONS, PLEASE VISIT OUR WEB SITE AT: WWW.KSREVENUE.ORG**

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: *Seller(s) MUST complete before signing.*

**Completed by Seller**

**Purchaser Information**

Name of Purchaser(s) as appears on Driver's License. _____

Address _____

City _____ State _____ Zip _____

Check the Appropriate Box
☐ I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle.
☐ The mileage stated is in excess of the mechanical limits of the odometer.
☐ The odometer reading is not actual mileage. WARNING-ODOMETER DISCREPANCY.

ODOMETER READING (No Tenths)

By the seller(s) signature, I/we swear and affirm the below stated purchase price is true and accurate under penalty of perjury. I/we am/are aware that the law provides severe penalties for making false statements under oath.

**PURCHASE PRICE** of the vehicle was: $ _____

**Vehicle was sold and delivered on:** *(Seller MUST record the date.)*

Month Day Year

I/we, the undersigned, hereby swear or affirm that I/we am/are the seller of the motor vehicle described herein and that the information provided in this title assignment is true and correct to the best of my/our belief. I/we am/are aware that the law provides severe penalties for making false statements under oath.

Dealer Number, if applicable _____

Seller Signature (If Dealership, Authorized Agent) _____

Seller's Hand Printed Name (Same Person(s) that Signed.) _____

**Buyer(s) MUST Complete, Regardless of Vehicle Age &/or Type**

**Is vehicle subject to a lien?**

MUST Check One
☐ Yes, Name of Lienholder or Secured Party: _____
☐ No
Address _____ City _____ State _____ Zip _____

I/we, the undersigned buyer(s), am/are aware of the odometer certification made by the seller(s). I/we hereby swear or affirm that all liens and encumbrances are listed herein, if applicable. I/we am/are aware that the law provides severe penalties for making false statements under oath.

Date _____

Buyer(s) Signature (Authorized Agent, If Dealership) _____

Buyer's Hand Printed Name (Same Person(s) that Signed.) _____

## FIRST REASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: *Seller(s) MUST complete before signing.*

**Completed by Seller**

**Purchaser Information**

Name of Purchaser(s) as appears on Driver's License. _____

Address _____

City _____ State _____ Zip _____

ODOMETER READING (No Tenths)

Check the Appropriate Box
☐ I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle.
☐ The mileage stated is in excess of the mechanical limits of the odometer.
☐ The odometer reading is not actual mileage. WARNING-ODOMETER DISCREPANCY.

**Vehicle was sold and delivered on:** *(Seller MUST record the date.)*

Month Day Year

I, the undersigned, hereby swear or affirm that I am the seller of the motor vehicle described herein and that the information provided in this title assignment is true and correct to the best of my belief. I am aware that the law provides severe penalties for making false statements under oath.

Dealer Number _____

Seller Signature (If Dealership, Authorized Agent) _____

Seller's Hand Printed Name (Same Person(s) that Signed.) _____

**Buyer(s) MUST Complete, Regardless of Vehicle Age &/or Type**

**Is vehicle subject to a lien?**

MUST Check One
☐ Yes, Name of Lienholder or Secured Party: _____
☐ No
Address _____ City _____ State _____ Zip _____

I/we, the undersigned buyer(s), am/are aware of the odometer certification made by the seller(s). I/we hereby swear or affirm that all liens and encumbrances are listed herein, if applicable. I/we am/are aware that the law provides severe penalties for making false statements under oath.

Date _____

Buyer(s) Signature (Authorized Agent, if Dealership) _____

Buyer's Hand Printed Name (Same Person(s) that Signed.) _____

## SECOND REASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: *Seller(s) MUST complete before signing.*

**Completed by Seller**

**Purchaser Information**

Name of Purchaser(s) as appears on Driver's License. _____

Address _____

City _____ State _____ Zip _____

ODOMETER READING (No Tenths)

Check the Appropriate Box
☐ I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle.
☐ The mileage stated is in excess of the mechanical limits of the odometer.
☐ The odometer reading is not actual mileage. WARNING-ODOMETER DISCREPANCY.

**Vehicle was sold and delivered on:** *(Seller MUST record the date.)*

Month Day Year

I, the undersigned, hereby swear or affirm that I am the seller of the motor vehicle described herein and that the information provided in this title assignment is true and correct to the best of my belief. I am aware that the law provides severe penalties for making false statements under oath.

Dealer Number _____

Seller Signature (If Dealership, Authorized Agent) _____

Seller's Hand Printed Name (Same Person(s) that Signed.) _____

**Buyer(s) MUST Complete, Regardless of Vehicle Age &/or Type**

**Is vehicle subject to a lien?**

MUST Check One
☐ Yes, Name of Lienholder or Secured Party: _____
☐ No
Address _____ City _____ State _____ Zip _____

I/we, the undersigned buyer(s), am/are aware of the odometer certification made by the seller(s). I/we hereby swear or affirm that all liens and encumbrances are listed herein, if applicable. I/we am/are aware that the law provides severe penalties for making false statements under oath.

Date _____

Buyer(s) Signature (Authorized Agent, if Dealership) _____

Buyer's Hand Printed Name (Same Person(s) that Signed.) _____

If application for Kansas title and registration is not made within 60 days of the date the vehicle was sold and delivered, penalty and interest will be assessed.

**Only One Additional Dealer Reassignment May Be Attached.**